# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. CV 11-6521-GW(JEMx) | Date  March 14, 2013 |
| Title  *National Credit Union Admin. Board v. Goldman Sachs and Co., et al.* | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Mary Rickey | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Terry W. Bird
Wan J. Kim
George A. Zelcs

Attorneys Present for Defendants:

Richard H. Klapper
Laura K. Oswell

**PROCEEDINGS:**   **DEFENDANTS GOLDMAN, SACHS & CO. AND GS MORTGAGE'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (filed 12/13/12);**

**DEFENDANTS GOLDMAN, SACHS & CO. AND GS MORTGAGE'S MOTION TO STRIKE CERTAIN PARAGRAPHS OF THE FIRST AMENDED COMPLAINT (filed 12/13/12)**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reason stated on the record, Defendants' motions are **TAKEN UNDER SUBMISSION**. Court to issue ruling.

: 20

Initials of Preparer   JG

<u>*Nat'l Credit Union Admin. Bd., as Liquidating Agent of U.S. Cent. Fed. Credit Union & of W. Corp Fed. Credit Union v. Goldman, Sachs & Co., et al.*</u>, Case No. CV-11-6521
Tentative Rulings on: (1) Defendants Goldman, Sachs & Co. and GS Mortgage Securities Corp.'s Motion to Strike Certain Paragraphs of the First Amended Complaint, and (2) Motion to Dismiss the First Amended Complaint

## I. Background

Defendants Goldman, Sachs & Co. and GS Mortgage Securities Corp. (collectively "Goldman") move to strike certain paragraphs from the First Amended Complaint ("FAC") on file in this action and to dismiss certain claims (to the extent they are based upon certain mortgage-backed securities certificates) as well. Because resolution of the motion to strike will affect which paragraphs the Court will consider in determining the sufficiency of the claims in the FAC, the Court will consider the motion to strike first.

## II. Analysis

### Motion 1

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Here, Goldman asks that the Court strike a number of paragraphs plaintiff National Credit Union Administration Board ("the NCUA") included in the FAC as a result of its reliance on allegations *other parties* made in *other* actions, some of which (according to the NCUA's Opposition) the NCUA may have verified, at least to some extent, by way of conversations with counsel prosecuting some of those other actions. Goldman's point is that, in its (and other courts') view, Rule 11(b)(3) of the Federal Rules of Civil Procedure[1] requires that the NCUA have done more than that in order to include such allegations in a pleading, and that its failure to do more means that the paragraphs should not be part of the FAC.

Goldman, however, has moved pursuant to Rule 12(f), not Rule 11. *See* Fed. R. Civ. P. 11(c)(2) (providing for motion for sanctions under Rule 11). Goldman appears to contend that the allegations lifted from other actions are irrelevant, immaterial or mere surplusage – "immaterial" being the only one of the three designations Goldman uses that appears in Rule

---

[1] In making allegations in a complaint filed with a federal court "an attorney...certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances...the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery...." Fed. R. Civ. P. 11(b)(3).

1

12(f). In the Ninth Circuit, given *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010), it is quite clear that Goldman may not prevail on this motion by way of Rule 12(f).

Under *Whittlestone*, where material "relates directly to the plaintiff's underlying claim for relief" it cannot be considered "immaterial." *Id.* at 974. As another way of presenting the limits of that term, "[i]mmaterial matter is that which has no essential or important relationship to the claim for relief of the defenses being plead." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (cited in *Whittlestone*, 618 F.3d at 974). The *Whittlestone* court also made clear that a court "may not resolve 'disputed and substantial factual or legal issue[s] in deciding…a motion to strike.'" *Whittlestone*, 618 F.3d at 973. All of these limitations on the rule indicate that the NCUA's practice of relying upon and adopting the allegations in question would not fall within the types of practices or allegations to which Rule 12(f) refers. *See also Coady v. Indymac Bancorp, Inc.*, CV 08-3812-GW (VBKx), Docket No. 232 (adopted Tentative Ruling), at 2 n.3 (C.D. Cal. June 6, 2012).

The parties have, for whatever reason, simply ignored *Whittlestone* in arguing this motion.[2] As that case demonstrates, however, if it has one at all, Goldman has identified an inappropriate basis for striking the paragraphs challenged from the FAC. The Court would deny Motion 1.

**Motion 2**

Goldman has attached an "Appendix A" to the end of its opening brief on this motion to dismiss in which it sets forth the certificates challenged by way of its Rule 12(b)(6) motion, grouped according to: 1) the reasons Goldman identifies for why the claims should be dismissed as a result of this proceeding, 2) have already been dismissed with prejudice,[3] or 3) have already been held to be satisfactorily pled. One of the reasons why Goldman believes the Court should dismiss the federal claims – Section 11 and Section 12 claims under the Securities Act of 1933 –

---

[2] No other decision from within the Ninth Circuit upon which Goldman relies even mentions *Whittlestone* – indeed, some of them do not even mention Rule 12(f). *See Maine State Retirement Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302 MRP (MANx), 2011 U.S. Dist. LEXIS 125203, *65-68 (C.D. Cal. May 5, 2011); *Cho v. UCBH Holdings, Inc.*, No. C 09-4208 JSW, 2012 U.S. Dist. LEXIS 123234 (N.D. Cal. Aug. 29, 2012). *Whittlestone* does not constrain those decisions issued outside the Ninth Circuit.

[3] Apparently, the NCUA maintains these claims in the FAC because of a concern that its right to appeal the Court's earlier ruling insofar as they are concerned would be waived if they were not so maintained. *See* FAC at 1 n.1. The NCUA need not do so. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925-28 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.").

made in connection with eight of the certificates at issue in this litigation is that those claims are barred either by the applicable statute of repose even with *American Pipe*[4] tolling or because the NCUA has not pled sufficient information to even be able to tell whether *American Pipe* tolling would apply (meaning that it therefore would *not* apply and the claims would consequently be time-barred). It is to this question of *American Pipe* and the sufficiency of the NCUA's pleading thereunder to which this analysis first turns (following a discussion of the Rule 12(b)(6) standards). The Court will then examine the FAC's factual allegations for purposes of examining whether the NCUA has sufficiently pled any timely claims.

### A. Applicable Procedural Standard

Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pled factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In its consideration of the motion, the court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *see also see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion"); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim may

---

[4] *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)), *cert. denied*, 131 S.Ct. 3055 (2011). "'[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Von Saher*, 592 F.3d at 969 (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

### B. Pleading *American Pipe* Tolling

On September 4, 2012, in dismissing the original Complaint, the Court informed the NCUA of the following: that 1) it had concluded that *American Pipe* tolling would apply "where a class representative purports to sue in connection with a particular security, at least until a court determines that plaintiff does not actually have standing," but also that it would not apply "if that class representative *never* purport[ed] to sue in connection with that particular security," and that 2) the NCUA would have to plead *American Pipe* tolling in conformity with the requirements set forth in *Stichting Pensioenfonds ABP v. Countrywide Financial Corp.*, 802 F.Supp.2d 1125, 1131 (C.D. Cal. 2011). *See* Docket No. 119; *see also* Docket No. 88, Tentative Ruling at 12 ("If the particular securities were *never* at issue in the earlier class actions cited for purposes of *American Pipe* tolling, that is a different question than whether the particular class representatives attempting to sue based in connection with particular securities actually had standing to do so. Whatever decision the Court makes about the latter situation, the former obviously would not give rise to *American Pipe* tolling."). As such, the Court required the NCUA to plead, among other things, the tranche(s) of any security(ies) it purchased, the grounds for asserting that a class representative in an earlier class action or putative class action purchased the security, and the tranche that such earlier class action representative plaintiff purchased.

As Goldman's Appendix A demonstrates, its *American Pipe* argument impacts federal claims based upon eight certificates at issue here: CWALT 2007-OA4, GSR 2007-OA1, RALI 2006-Q06, RALI 2006-Q010, RALI 2007-QH2, RALI 2007-QH3, RALI 2007-QH5, and RALI 2007-QH6. As Goldman argues, the NCUA either has not satisfied the *Stichting* pleading requirement or has made clear, by way of its *Stichting* pleading, that the tolling ended at a

4

sufficiently early time that the repose period expired.[5] *See* FAC ¶¶ 411-418; *see also* 15 U.S.C. § 77m ("In no event shall any such action be brought…more than three years after the security was bona fide offered to the public, or…more than three years after the sale.").

In response, the NCUA argues that *American Pipe* tolling applies until *the court* in the earlier class action or putative class action determines that the named plaintiff has no standing or denies class certification or makes some other ruling indicating that the named plaintiff can no longer be seen as representing others' interests. It also argues that, notwithstanding this Court's earlier ruling consistent with *Stichting* on this point, it need not actually demonstrate that the same certificates were at issue in the earlier case and in this case.

As to the first point, while it is true that the Court indicated that *American Pipe* tolling would apply "at least until a court determines that [class representative] plaintiff does not actually have standing," the NCUA leaves out that this is only true, at least in this Court's view, "where a class representative purports to sue in connection with a particular security."[6] Docket No. 119. Moreover, this Court, by way of its reliance upon and citation to *Stichting*, unquestionably required the NCUA to demonstrate, at the certificate-specific and tranche-specific level of detail, the necessary overlap factor inherent in any *American Pipe* tolling circumstance. As such, where it is clear from a filing in the earlier putative class action – such as a representative plaintiff's specific listing of the certificates which that plaintiff purchased – that the representative plaintiff had not purchased the certificate or tranche the NCUA purchased, the NCUA may not rely upon that earlier putative class action for *American Pipe* tolling purposes, at least as of the time in which the representative plaintiff in the earlier putative class action made that disclosure. The only conceivable exception to this rule would be where, notwithstanding the representative plaintiff's specific delineation of his, her or its purchases, the court overseeing that putative class action in fact *certified a class* which covered the NCUA's purchases (notwithstanding the limitations of the representative plaintiff's purchases).

Part of the NCUA's reason for its latter position (that the certificate/tranche level of detail

---

[5] Appendix B attached to Goldman's opening brief reflects Goldman's calculations concerning the running of the repose period(s), the accuracy of which the NCUA does not contest.

[6] While the Court agrees with the Seventh Circuit's view that it is irrelevant, in the context of *American Pipe* tolling, how an earlier action *ends, see Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 562 (7th Cir. 2011), what *is* relevant is whether the representative plaintiff in the earlier action actually purchased the same security as the current plaintiff.

5

is not necessary to implicate *American Pipe* tolling[7]) is that the type of information this Court (and *Stichting*) require was simply unavailable (in at least one instance). But if that information is unavailable, it does not mean that *American Pipe* tolling simply continues on into the future; it simply means that such tolling might never have kicked in at all. As this Court has made clear, *American Pipe* tolling only applies "where a class representative purports to sue in connection with a particular security." In other words, if the class representative never purported to act on your behalf, then you would not enjoy any tolling as a result of his, her or its class work (putative or otherwise). The only conceivable exception in this regard is where an earlier putative class action used a class definition that would have covered the NCUA's purposes (as is true with respect to all of the eight certificates at issue here) *and* the representative plaintiff did not provide – nor did the Court administering that putative class action demand – specification as to the representative plaintiff's purchases (as is true with respect to *only one* of the eight certificates at issue here, *see* FAC ¶ 418). In that situation, the NCUA would not have been on notice that the earlier class action did not in fact involve a representative plaintiff who had purchased the same certificate/tranche as the NCUA.

The other reason the NCUA argues with this Court's adoption of the *Stichting* requirements is that the Second Circuit has now taken a different approach. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012). In several other post-*Stichting* decisions, Judge Pfaelzer (the author of *Stichting*) only reaffirmed the pleading obligations established by *Stichting*, including in the wake of *NECA-IBEW*. *See F.D.I.C. v. Countrywide Fin. Corp.*, No. 2:12-CV-4354 MRP (MANx), 2012 U.S. Dist. LEXIS 167696, *27-40 & n.22 (C.D. Cal. Nov. 21, 2012); *W. & S. Life Ins. Co. v. Countrywide Fin. Corp. (In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.)*, Nos. 2:11-ML-02265-MRP (MANx), 2:11-cv-07166-MRP (MANx), 2:11-cv-09889-MRP (MANx), 2012 U.S. Dist. LEXIS 60776, *12-21 (C.D. Cal. Mar. 9, 2012). She also further explained the need for such detailed pleading in *Maine State Retirement System v. Countrywide Financial Corp.*, 722 F.Supp.2d 1157, 1164-65 (C.D. Cal. 2010), and elsewhere. *See also Putnam Bank v. Countrywide Fin. Corp. (In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.)*, 860 F.Supp.2d 1062, 1068-69 (C.D. Cal. 2012) ("[E]ach separate tranche of an Offering is a separate security with its own CUSIP, credit

---

[7] As it turns out, specification of the earlier representative plaintiffs' purchases *at the tranche level* was unnecessary, as the NCUA has alleged that those representative plaintiffs not only did not purchase the same tranches as the NCUA, but in fact did not even purchase as part of the same *offerings/certificates*. *See* FAC ¶¶ 411-417.

rating, interest rate, rights of distribution, credit-enhancement rights, and backing loans. The Court's tranche-based standing rulings are based on the fact that each tranche is a legally distinct security, but also on the economic reality that each tranche provides a fundamentally different balance of risk, terms, and interest rate. Each tranche is evaluated and priced separately in order to allow investors to strike whatever balance between riskiness and interest rate the investors' particular needs dictate."). In short, this Court shares Judge Pfaelzer's views with respect to the Second Circuit's reasoning in *NECA-IBEW* (which is, of course, not controlling on this Court in any event).

As such, unless the NCUA can show that a class *was actually certified* covering its purchases,[8] any tolling ended with respect to GSR 2007-OA1 as of February 9, 2009. *See* FAC ¶ 411. Any tolling with respect to RALI 2006-Q06 and RALI 2006-Q010 ended January 12, 2009 (and did not begin again, if at all, until the repose period had already expired). *See id.* ¶¶ 412-413. Unless the NCUA can allege that a class or classes *were certified* covering their purchases, the NCUA did not enjoy *any* tolling with respect to RALI 2007-QH2, RALI 2007-QH3, RALI 2007-QH5, and RALI 2007-QH6 because the named representative plaintiffs did not purchase any RALI 2007-QH2, RALI 2007-QH3, RALI 2007-QH5 or RALI 2007-QH6 certificates, and that fact was disclosed on the date the earlier relevant putative class action was filed. *See id.* ¶¶ 414-417. Therefore, with respect to Section 11 and Section 12 claims based upon purchases of these seven certificates, *American Pipe* tolling cannot save these claims from being dismissed as untimely.

The same *cannot* be said for CWALT 2007-OA4, however. *See id.* ¶ 418. There, a putative class purported to encompass the NCUA's purchases, *and there was no public information indicating to the NCUA that its particular certificates/tranches had not been purchased by the putative class representative(s)*. As such, the NCUA would not have been on notice that their purchase was not represented in those putative class actions. Although the NCUA has not pled all of the detail that *Stichting* demands with respect to *American Pipe* tolling of an action based upon this particular certificate, it has pled as much detail as was available to it from those earlier actions. That level of detail demonstrates that it had a basis for believing the

---

[8] This clause would apply to all of the certificates mentioned in this paragraph. It is made necessary by the observation that the plaintiffs in the earlier putative class actions sought to encompass classes of purchasers that would have included the NCUA's purchases, but made clear by way of public filing – either at the outset of the case or at some later juncture – that they had not purchased the same certificates/tranches as the NCUA had.

7

earlier putative class actions covered its purchase of this certificate, and there was apparently no information available that demonstrated the NCUA could not so rely on that belief.[9]

Even the courts that have rejected the approach to *American Pipe* that Judge Pfaelzer has adopted have indicated that "[t]here may be circumstances where the representative so clearly lacks standing that no reasonable class member would have relied" for purposes of *American Pipe* tolling. *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 810 F.Supp.2d 650, 669 (S.D.N.Y. 2011). Thus, only where there is at least a "bona fide dispute" over the named plaintiff's standing in an earlier class action or putative class action would there be a basis for applying tolling. *See F.D.I.C.*, 2012 U.S. Dist. LEXIS 167696, *31-32 n.20; *Putnam Bank*, 860 F.Supp.2d at 1069-70; *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F.Supp.2d 1164, 1178-79 (C.D. Cal. 2011). This Court believes (at least based on the arguments presented thus far) that NCUA had at least a "bona fide dispute" with respect to the standing of the representative plaintiffs in the earlier cases covering CWALT 2007-OA4. Given the revelations by the representative plaintiffs in the actions covering the other seven of the eight certificates at issue in this argument, the NCUA had no such bona fide dispute, as Judge Pfaelzer explained in the course of various branches of the Countrywide litigation. *See F.D.I.C.*, 2012 U.S. Dist. LEXIS 167696, *34-40 (explaining difference between standing and Rule 23 considerations); *Putnam Bank*, 860 F.Supp.2d at 1069; *cf. Petzschke v. Century Aluminum Co. (In re Century Aluminum Co. Secs. Litig.)*, 704 F.3d 1119 (9th Cir. 2013) (concluding that Section 11 plaintiff who could not trace aftermarket-purchased shares back to particular allegedly false or misleading registration statement had not sufficiently alleged statutory standing in conformity with *Twombly* and *Iqbal*).

In sum, the federal claims based upon the seven certificates referenced above are time-barred and dismissed with prejudice.

---

[9] In one branch of the Countrywide litigation she oversaw, Judge Pfaelzer reasoned that notwithstanding the representative plaintiffs' failure to specify purchases in one of the cases upon which the NCUA also relies for *American Pipe* tolling *vis a vis* its CWALT 2007-OA4 purchase, the plaintiff in her case could not have *reasonably believed* that the earlier representative plaintiffs had standing to represent the interests of the plaintiff in her case. *See Putnam Bank v. Countrywide Fin. Corp. (In re Countrywide Fin. Corp. Mortg.-Backed Secs. Litig.)*, 860 F.Supp.2d 1062, 1070 (C.D. Cal. 2012) ("That Putnam did not know what RMBS the Luther plaintiffs purchased only reinforces that no reasonable plaintiff would have believed that the Luther plaintiffs had standing to represent a class so enormous or to protect its claim."); *see also F.D.I.C. v. Countrywide Fin. Corp.*, No. 2:12-CV-4354 MRP (MANx), 2012 U.S. Dist. LEXIS 167696, *31 (C.D. Cal. Nov. 21, 2012). Goldman does not appear to have advanced that "reasonable belief" argument at this point in this case.

8

### C. Sufficiency of the Timely Claims

While the above approach rules out a number of the federal claims the NCUA asserts, the Court must still determine the sufficiency of the NCUA's allegations concerning the originators of the loans backing the various mortgage-backed securities at issue here. Appendix A to Goldman's motion summarizes that the origination practices of First Franklin Financial Corporation ("First Franklin"), GreenPoint Mortgage Funding Inc. ("GreenPoint"), Homecomings Financial, LLC f/k/a Homecomings Financial Network, Inc. ("Homecomings"), First Magnus Financial Corporation ("First Magnus"), First National Bank of Arizona ("FNB Arizona") and SCME Mortgage Bankers Inc. ("SCME") are at issue insofar as this argument is concerned.

The Court has already explained in detail that it expects "something more" than post-origination performance statistics in order for a plaintiff to demonstrate the systematic abandonment of an originator's underwriting guidelines. *See* Docket No. 88, Tentative Ruling at 14-16; *see also Nat'l Credit Union Admin. Bd. v. RBS Secs., Inc.*, CV 11-5887-GW (JEMx), Docket No. 108, Tentative Ruling at 3-11; *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*, __ F.3d __, 2013 U.S. App. LEXIS 4317, *34 n.7 (2d Cir. Mar. 1, 2013); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 773-74 (1st Cir. 2011). Once again, "[t]he Court need not attempt the difficult task of defining precisely where [the *Twombly/Iqbal*] dividing line is located" in this class of cases. Docket No. 88, Tentative Ruling at 15.

On March 1, 2013, the Second Circuit issued *New Jersey Carpenters*.[10] While this Court still believes that post-purchase/origination performance statistics alone would not be sufficient to withstand a Rule 12(b)(6) challenge, it also finds the Second Circuit's discussion in *New Jersey Carpenters* persuasive in certain respects (but not to the extent that decision followed *NECA-IBEW* on the question of standing, *see New Jersey Carpenters*, 2013 U.S. App. LEXIS 4317, at *5, 48-50).

In particular, in *New Jersey Carpenters*, between the Consolidated First Amended Securities Class Action Complaint and Second Amended Class Action Complaint, the plaintiffs *added* allegations concerning the reports of several (specifically, eight) employees (located in

---

[10] The NCUA drew the Court's attention to this decision by way of a notice of supplemental authority. *See* Docket No. 138. Goldman has responded with its view of the impact of the case. *See* Docket No. 139.

9

offices in Kansas City, Ohio, California and Florida, and working in "different aspects of NMI's origination process") attesting to systematic disregard of underwriting standards to the statistical allegations concerning steep downgrades in credit ratings and high early payment default figures that were already present in the earlier iteration of the plaintiffs' pleading. *See id.* at *5, 13-21, 35. The Second Circuit found this added material significant in its *Twombly/Iqbal* analysis:

> The statements from prior NFMC and NMI employees suggest that NMI – throughout the relevant time period and at different locations across the country – disregarded its underwriting guidelines, approving loan applications despite deficiencies in an effort to generate a large volume of mortgages that it could sell to third parties. These allegations are suggestive of, rather than merely consistent with, a finding of liability.

*Id.* at *32-33. In response to a concern that such a small number of employees could not possibly speak to a company with a total of 432 offices, the Second Circuit emphasized that the plaintiffs alleged "that those offices were 'regional operations offices' and that they were spread across the country."[11] *Id.* at *35-36.[12]

The Court's initial concern that the underwriting problems alleged must be specifically connected to loans or loan pools that back the particular certificates at issue is lessening over time, at least partially also due to the Second Circuit's reasoning in *New Jersey Carpenters*. There, the court linked up the employee-based reports of systematic disregard with, among other things, statistics showing high *early* payment default rates in the loans backing the particular certificates at issue. *See id.* at *36-37. The NCUA provides such statistics in this action at Table A of the FAC. *See* FAC at 20-21, Table 5.[13]

---

[11] Goldman attempts to distinguish the "anecdotal" allegations present in the FAC with those at issue in *New Jersey Carpenters* by stressing that "regional operations offices" were involved in that case. Without a great deal more information about what that rather generic phrase meant in that case, this would not appear to be a meaningful distinction for purposes of distinguishing the allegations here.

[12] The court also commented that "the statements relayed in the [second amended complaint] provide no basis for believing that factors unique to the relevant offices, rather than company-wide practices, resulted in the 'pressure to achieve loan production' that these employees allegedly experienced," meaning that the court should "draw the reasonable inference" that the allegations were of "widespread practices." *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*, __ F.3d __, 2013 U.S. App. LEXIS 4317, *36 (2d Cir. Mar. 1, 2013). By itself, this mode of analysis would appear to suggest a court getting the *Twombly/Iqbal* analysis backwards – it is up to a plaintiff to plead *facts* suggesting a plausible claim (as determined by way of plausible inferences *from those facts*); it is not up to a defendant to prove the limited reach of a plaintiff's allegations. However, in light of the fact that this was just one aspect of the court's *Twombly/Iqbal* discussion, the court's overall analysis would not appear to run afoul of the applicable analytical rules.

[13] In addition, as noted previously, the NCUA provides an originate-to-distribute ("OTD") statistic which reflects the relative emphasis an originator placed on shifting the risks presented by a mortgage post-origination. *See* FAC at 24, Table 6. For the originators at issue in this motion, only one – FNB Arizona – had an OTD percentage less than

Taking all of the above into consideration, the Court concludes that the allegations of systematic disregard or abandonment of underwriting standards and guidelines in the FAC are sufficient as to First Franklin (*see* FAC ¶¶ 148-56, 159-61, 163-64), GreenPoint (*see id.* ¶¶ 201-207, 209-212), and Homecomings (*see id.* ¶¶ 223-227, 232-234, 236-238). Although Goldman would like the Court to view many of these allegations not as *systematic disregard* of underwriting guidelines, but instead as *blind adherence* to underwriting guidelines involving loan products that, by their very nature, were risky products, that is not a conclusion that the Court is prepared to reach on the basis of the NCUA's pleadings.

Allegations concerning First Magnus (*see, e.g.*, FAC ¶¶ 167-69) are a little less detailed and robust (compared both to the allegations involving First Franklin, GreenPoint and Homecomings herein, and to the allegations at issue in *New Jersey Carpenters*), and therefore closer to the *Twombly/Iqbal* line. But however the Court would resolve that question as to First Magnus alone, *none* of the certificates at issue in this motion involved loans originated *only* by First Magnus. See Goldman's Opening Brief, Appendix A. *All* of the certificates involving First Magnus *also* involved loans originated by Homecomings, FNB Arizona and SCME. *See id.*

Assuming that FNB Arizona can be assigned blame for issues relating to First National Bank of Nevada because FNB Arizona "ran the FNB Group's residential mortgage lending operation," *id.* ¶ 176, the allegations concerning FNB Arizona are likely sufficient. *See id.* ¶¶ 178-182, 188. In any event, even if the Court is incorrect in that assessment, like First Magnus, FNB Arizona is only *part* of the originator pipeline on *some* of the certificates at issue. *See* Goldman's Opening Brief, Appendix A. It is *not* the *sole* originator at issue with respect to *any*. *See id.*

Finally, as to SCME, the NCUA concedes that it has no "narrative" allegations, *i.e.* "something more." Indeed, it alleges only that SCME was near the top in a statistic measuring percentage of loans packaged into mortgage-backed securities, *i.e.* the originate-to-distribute statistic. *See id.* ¶¶ 264-265. If SCME were the only originator with respect to any of the certificates – like First Magnus and FNB Arizona, it is not – any claim based on such certificate would be dismissed as insufficient under *Twombly* and *Iqbal*.

All of these originator-specific allegations are further supported by the NCUA's

---

80% for any of the three years between 2005 and 2007. *See id.* For 2006, FNB Arizona's OTD percentage was 79.9%. *See id.* When all of those originators are considered for those three years combined, the OTD percentage was greater than 90% for 9 out of 17 periods for which the statistic is reported in the FAC. *See id.*

allegations concerning information provided by Clayton Holdings, a "leading provider of due diligence services for RMBS offerings during the relevant time period." *Id.* ¶¶ 298-299. That entity's investigation(s) backs the conclusion that the industry in general was plagued with severe underwriting deficiencies, *see id.* ¶¶ 300, 302, and Clayton Holdings "confirmed that the [mortgage-backed securities] sold by Goldman...from the beginning of 2006 through the middle of 2007...contained a substantial number of loans that were not originated in conformity with underwriting guidelines." *Id.* ¶ 301; *see also id.* ¶¶ 302, 307-308.[14]

In sum, the Court would conclude that there is no *Twombly/Iqbal* deficiency with respect to any of the certificates Goldman challenges in that regard (as set forth in Appendix A to Goldman's motion).[15]

---

[14] Goldman's efforts to explain away the Clayton Holdings-based allegations by way of citation in its Reply brief to testimony from an employee of that entity is inappropriate for at least two reasons – 1) Goldman has waited until its Reply to raise this argument for the first time notwithstanding the presence of these allegations in the FAC and 2) this is a Rule 12(b)(6) motion, with no demonstrated reason why the Court could consider the testimony Goldman presents.

[15] The Court need not even consider the NCUA's allegations about its forensic review(s) of Loan-To-Value ratios and Owner-Occupancy ratios, *see* FAC ¶¶ 311-328, in order to reach this conclusion.