TERRY BIRD
twb@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Fax: (310) 201-2110

Attorneys for Plaintiff National Credit Union
Administration Board
 (Additional Counsel on Signature Page)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of Western Corporate Federal Credit Union,<br><br>Plaintiff,<br>vs.<br><br>GOLDMAN, SACHS & CO., GS MORTGAGE SECURITIES CORP., And RESIDENTIAL ACCREDIT LOANS, INC.,<br><br>Defendants. | Case No. CV 11-6521 GW(JEMx)<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE SETTLING PARTIES' JOINT MOTION FOR A BAR ORDER**<br><br>Am. Compl. filed: October 29, 2012<br>Judge:        Hon. George Wu<br>Courtroom:    10 |

**REDACTED VERSION**

REPLY MEMORANDUM IN SUPPORT OF THE SETTLING PARTIES' JOINT MOTION FOR A BAR ORDER

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

ARGUMENT ............................................................................................................... 3

    I.    The Proportionate-Share Provision of the Proposed Contribution Bar Order Fully Protects the Non-Settling Defendants ......................... 3

        A.    Goldman Has No Legitimate Interest in Challenging NCUA's and Barclays' Allocation of the Settlement ................. 3

        B.    Goldman's Assertions About NCUA's Prior Settlement Allocations are Irrelevant and Incorrect ...................................... 6

    II.    RBS Has No Right to Immediate Discovery of the Settlement Allocations ............................................................................................ 8

CONCLUSION .......................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABF Capital Mgmt. v. Askin Capital*,
  2000 WL 191698 (S.D.N.Y. Feb. 10, 2000) ...................................................... 10

*Aks v. Southgate Trust Co.*,
  1992 WL 401708 (D. Kan. Dec. 24, 1992) ........................................................ 3

*Bottaro v. Hatton Assocs.*,
  96 F.R.D. 158 (E.D.N.Y. 1982) ..................................................................... 9, 10

*Burlington v. News Corp.*,
  2015 WL 2070063 (E.D. Pa. May 4, 2015) ...................................................... 10

*In re Consolidated Pinnacle West Securities Litigation/RTC-Merabank Litigation*,
  51 F.3d 194 (9th Cir. 1995) .............................................................................. 3

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989) .......................................................................... 4

*Gerber v. MTC Electronic Technologies Co.*,
  329 F.3d 297 (2d Cir. 2003) ......................................................................... 3, 4

*In re Greektown Holdings, LLC*,
  728 F.3d 567 (6th Cir. 2013) ............................................................................ 3

*In re Heritage Bond Litig.*,
  546 F.3d 667 (9th Cir. 2008) ............................................................................ 4

*In re Lendvest Mortgage, Inc.*,
  42 F.3d 1181 (9th Cir. 1994) ............................................................................ 5

*In re Masters Mates & Pilots Pension Plan & IRAP Litigation*,
  957 F.2d 1020 (2d Cir. 1992) ........................................................................... 4

*NCUA v. Morgan Stanley & Co.*,
  No. 13-cv-6705 (S.D.N.Y), ECF No. 314, at 3-4 ............................................... 7

*Polston v. Eli Lilly & Co.*,
 2010 WL 2926159 (D.S.C. July 23, 2010) ............................................................ 10

*Wagner v. Circle W Mastiffs*,
 2013 WL 4479070 (S.D. Ohio Aug. 19, 2013) ..................................................... 10

*In re WorldCom, Inc. ERISA Litigation*,
 339 F. Supp. 2d 561 (S.D.N.Y. 2004) .................................................................... 5

**Statutes**

12 U.S.C. § 1752a(b) ..................................................................................................... 10

**Other Authorities**

12 C.F.R. § 709.5(b) ...................................................................................................... 10

Fed. R. Civ. P. 7(b)(1) ..................................................................................................... 8

FHFA, *FHFA Announces Settlement with RBS* (June 19, 2014),
 http://www.fhfa.gov/Media/PublicAffairs/Pages/FHFA-
 Announces-Settlement-with-RBS.aspx ................................................................ 11

**PRELIMINARY STATEMENT**

The Proposed Contribution Bar Order sought jointly by NCUA[1] and Barclays is materially identical to orders sought by other defendants in similar RMBS securities cases, including by RBS in the *FHFA* actions. It is an appropriate measure to facilitate the resolution of NCUA's claims against settling defendants (here, Barclays) while fully protecting the interests of other Defendants against which NCUA continues to litigate (here, Goldman and RBS). No one disputes that the Proposed Order puts Goldman and RBS in a position *at least* as favorable as their position would have been if NCUA and Barclays had never settled at all. Indeed, the Proposed Order is even more favorable to Goldman and RBS than is the status quo, because it allows them to reduce any recovery NCUA obtains against them at trial by an amount at least proportionate to Barclays' share of responsibility for NCUA's damages. Under governing law, Defendants can ask for no more. That is presumably why RBS does not object to the substantive provisions of the Proposed Order at all.

Goldman (which does object) argues primarily that it is entitled to see how NCUA and Barclays allocated the settlement amount to the particular Overlapping Securities that will be affected by the Proposed Order. As a matter of law, that is no basis for an objection to the Proposed Order: the allocation need not be disclosed because Goldman (whose interests are fully protected by the proportionate-share reduction) has no right to challenge it. Goldman provides no basis for judicial inquiry into the fairness of the valuation that NCUA and Barclays

---

[1] Abbreviated terms such as "NCUA," "Barclays," "Goldman," "RBS," and "Overlapping Securities" have the meanings given in the opening memorandum (at 1 & nn.1-4). Goldman's opposition is cited as "Goldman Opp." RBS's limited opposition is cited as "RBS Opp." NCUA has filed substantially identical versions of this reply in the *Barclays Kansas Action*, *Barclays New York Action*, *RBS Kansas Action*, and the *Goldman California Action*. Barclays has partially joined in this reply in cases to which it is a party.

have used for particular claims and will suffer no prejudice from obtaining that information at a later date.

Nor can Goldman support its claim that NCUA has "skewed" past settlements to reduce allocations to overlapping Certificates. That incorrect contention rests on two mistakes. *First*, Goldman misrepresents NCUA's previous disclosures by erroneously asserting that NCUA allocated zero settlement dollars to certain Certificates. *Second*, Goldman fails to distinguish claims that actually formed the basis for NCUA's settlement negotiations from claims that were included in a settlement agreement but on which NCUA never brought suit. Those basic errors are at least in part because, until its opposition last week, Goldman never raised any concern about past settlement allocations, even though NCUA provided information about those allocations five months ago. In all events, Goldman offers no support for its claim that past allocations (even if "skewed") provide a legal basis for challenging the Proposed Order in light of the proportionate-share provision.

Unlike Goldman, RBS does not object to the substantive provisions of the Proposed Order; nor does it suggest that it has any right to challenge the Settling Parties' allocation of settlement funds to particular Certificates. Its "Limited Opposition" consists only of a procedurally improper attempt to raise a discovery dispute. RBS argues that it should receive disclosure of the allocations for Overlapping Securities right away, rather than after summary judgment. That argument rests on a mischaracterization of the parties' earlier agreement about disclosure of previous settlement allocations and is in any event meritless.

# ARGUMENT

## I. The Proportionate-Share Provision of the Proposed Contribution Bar Order Fully Protects the Non-Settling Defendants

### A. Goldman Has No Legitimate Interest in Challenging NCUA's and Barclays' Allocation of the Settlement

The primary dispute over the Proposed Order is whether Goldman is entitled to scrutinize and challenge the fairness of the Settling Parties' allocation of their agreed settlement to particular Overlapping Securities. As the Settling Parties showed in their opening memorandum, Goldman is not entitled to do so because its interests are already fully protected by the terms of the Order. *See* Exh. A, at 4 (providing a judgment credit "that is the greater of" the amount allocated in the settlement or "the proportionate share of Barclays Capital's fault as proved at trial"). As then-Judge Sotomayor explained in *Gerber v. MTC Electronic Technologies Co.*, 329 F.3d 297 (2d Cir. 2003), "no . . . fairness hearing is necessary" where "the non-settling defendants' credit will be the *greater* of the proportionate fault or the settlement amount," because such a provision standing alone "adequately compensates the non-settling defendants for their indemnity and contribution claims." *Id.* at 306; *see also In re Greektown Holdings, LLC*, 728 F.3d 567, 576 n.7 (6th Cir. 2013) (discussing *Gerber* and other authority holding that "no evidentiary fairness hearing is necessary" where a bar order contains a "judgment reduction [provision that] calls for . . . a proportionate fault method"). The Ninth Circuit's decision in *In re Consolidated Pinnacle West Securities Litigation/RTC-Merabank Litigation*, 51 F.3d 194 (9th Cir. 1995), and Judge Lungstrum's decision in *Aks v. Southgate Trust Co.,* 1992 WL 401708 (D. Kan. Dec. 24, 1992), both of which approved the use of proportionate-share provisions, point to the same conclusion; so do Judge Cote's bar orders in *FHFA* in favor of RBS and Barclays, which tracked the orders approved in *Gerber.*

1    Goldman's attempt to distinguish NCUA's cases fails.  It argues that they did
2    not involve allocations of amounts between overlapping and non-overlapping
3    securities.  Even Goldman concedes (at 14-15), however, that Judge Cote's bar
4    orders in favor of RBS and of Barclays in the *FHFA* cases involved just such
5    allocations.  In any event, Goldman's purported distinction is meaningless.  In *any*
6    contribution-bar scenario, a non-settling defendant's concern is that the settlement
7    amount will be too low; that the non-settling defendant will therefore have to pay
8    an excessive share of the plaintiffs' losses; and that the bar order will prevent the
9    non-settling defendant from recovering that excess back from the settling
10   defendant.  *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1230 (9th Cir. 1989)
11   (discussing the drawbacks of a pure "offset scheme").  The proportionate-share
12   provision in the bar order resolves that problem by eliminating any possibility that
13   the non-settling defendant will have to pay more than its fair share.  *See Gerber*,
14   329 F.3d at 303; *Franklin*, 884 F.2d at 1231.  That is true regardless of whether the
15   non-settling defendant expresses concern about a total settlement amount or about a
16   particular allocation; in either case, the concern is resolved by the proportionate-
17   share provision.  So long as there is no possibility that NCUA's settlement with
18   Barclays will result in Goldman paying NCUA more than Goldman's fair share of
19   NCUA's losses (and under the Proposed Order, there is no such possibility) then
20   Goldman has no right to a hearing at which to contest the Settling Parties'
21   allocation of the settlement amounts.

22   None of the cases on which Goldman relies (at 9-11) are to the contrary.  *In
23   re Masters Mates & Pilots Pension Plan & IRAP Litigation*, 957 F.2d 1020 (2d Cir.
24   1992), disapproved a contribution bar under which the non-settling defendant could
25   have received a judgment credit of *less* than a proportionate share of liability.  *See*
26   *id.* at 1029.  *In re Heritage Bond Litig.*, 546 F.3d 667 (9th Cir. 2008), followed
27   *Gerber* in part, *see id.* at 670-71, and thus suggests if anything that the Ninth
28   Circuit would be likely to adopt *Gerber*'s approach in its entirety.  Judge Cote's

opinion in *In re WorldCom, Inc. ERISA Litigation*, 339 F. Supp. 2d 561 (S.D.N.Y. 2004), acknowledged and applied the rule that no fairness hearing is required where a bar order incorporates a proportionate-share provision. *See id.* at 569.[2] None of those cases suggest that Goldman has a right to a hearing at which it may challenge the fairness of NCUA's settlement with Barclays or its allocation of value to particular claims. And because Goldman has no right to contest the Settling Parties' claim allocation, it has no legitimate interest in learning immediately what that allocation is.[3]

The Settling Parties by contrast (especially NCUA) have a legitimate interest in keeping their allocation confidential – including, at least for now, confidential from the Non-Settling Defendants. NCUA's allocations reflect the amounts it was willing to accept from a co-underwriter for certain claims that it is presently litigating against Non-Settling Defendants (here, Goldman and RBS). In the near future, many other things will happen (such as other settlement agreements, expert depositions, and summary judgment motions) that will likely change those valuations. But as of this moment, it would prejudice NCUA's negotiating position

---

[2] Goldman also cites (at 10) *In re Lendvest Mortgage, Inc.*, 42 F.3d 1181 (9th Cir. 1994), but that case did not involve a contribution bar order at all. Instead, it involved a bankruptcy court's review of a settlement of preferential transfer claims, with no procedural mechanism comparable to the proportionate-share provision to protect the interests of non-settling parties. It is thus unpersuasive here. The same applies to the other cases Goldman relegates to a footnote (at 10 n.10).

[3] Goldman argues in the alternative (at 14-15) that it should be permitted to learn the allocation at the time of the pretrial orders in its New York and California actions, in case the amounts may affect its trial strategy in either of those cases. Judge Cote's previous bar orders in *FHFA* provided expressly for such disclosure at such a time. The Settling Parties do not object to the inclusion of a similar express provision in the Proposed Order, which would eliminate any conceivable prejudice by providing allocation information to Goldman well before its trial dates. The Settling Parties can submit a revised Proposed Order if that would be helpful to the Courts.

to disclose that particular information to Defendants immediately. Defendants, by contrast, suffer no prejudice by not learning the information until closer to trial.

### B. Goldman's Assertions About NCUA's Prior Settlement Allocations are Irrelevant and Incorrect

Goldman devotes much of its opposition to irrelevant – and factually incorrect – assertions that NCUA's previous settlement allocations were "skewed" in a way that purportedly disadvantaged non-settling defendants. Those assertions are legally irrelevant for the reasons already given: even if the Settling Parties had allocated an unfairly low amount of the Barclays settlement recovery to the Overlapping Securities, Goldman would not be injured. In addition to being irrelevant, Goldman's assertions about the reasons for NCUA's past settlement allocations are also quite misconceived. NCUA disclosed the past allocation information on which Goldman relies to all Defendants in June 2015.[4] No Defendant raised any concerns about any of those allocations with NCUA before Goldman filed its opposition to the Proposed Order. Had Goldman's counsel done so, they would have learned their suspicions were incorrect, and their accusations unwarranted.

*First*, Goldman is simply wrong when it states that NCUA allocated zero settlement dollars to certain claims ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Specifically, Goldman represents that NCUA allocated zero settlement dollars to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; and also allocated zero settlement dollars to ▓▓▓▓▓▓▓▓▓▓▓▓

---

[4] In particular, NCUA disclosed its internal allocations for any overlapping Certificates (that is, Certificates that were at that time being litigated against Defendants and that also had been included in past settlements). *See* Goldman Exh. 1, at 8 (explaining that response is limited "to Certificates at issue in the NCUA Action"); *see also id.* at 6 (objecting to Defendants' interrogatory as "overly burdensome in that it seeks detailed information regarding the purchases of . . . RMBS Certificates . . . [that] are not at issue in this litigation").

1   ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. That is false.  NCUA never disclosed any
2   allocation for those Certificates because they are not at issue in any of these
3   coordinated cases.  *See supra* note 4.[5]  If Goldman wanted to know why there was
4   no information about those particular allocations in NCUA's June 15 disclosure, it
5   could and should have asked NCUA any time between then and the present.[6]
6   Contrary to Goldman's representations, NCUA's allocations as to those purchases
7   by those Credit Unions were neither zero nor *de minimis*.

8       *Second*, Goldman points to relatively small allocations of settlement amounts
9   to purchases of certain overlapping Certificates.  But Goldman fails to mention that
10  those purchases were not part of any complaint that NCUA filed against the past-
11  settling Defendants.[7]  When NCUA has negotiated RMBS settlements, including
12  settlements in these coordinated cases, it has come to the bargaining table with an
13  identified set of claims that it is asserting against the settling defendant (such as the
14  claims NCUA had already filed against JP Morgan and its affiliates); or, in some
15  pre-suit negotiations (such as with Bank of America) claims that it planned to
16  assert.  In some instances, however, Defendants have negotiated a broader release

---

[5] ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

[6] Throughout these cases, the Courts have denied untimely discovery requests where parties "ha[ve] shown no cause for . . . delay."  *E.g., NCUA v. Morgan Stanley & Co.*, No. 13-cv-6705 (S.D.N.Y), ECF No. 314, at 3-4; *see id.*, ECF No. 224, at 4 (requests for more discovery must "explain[] why the request is timely and could not have been made earlier").

[7] ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

of *additional* claims that NCUA had not asserted (or, in pre-suit negotiations, did not intend to assert) against the settling Defendant on behalf of the Credit Unions.[8] Where that has occurred, allocating *de minimis* amounts of the settlement recovery to such additional claims is reasonable and appropriate, because the release of those claims did not contribute materially to the total settlement recovery.

## II. RBS Has No Right to Immediate Discovery of the Settlement Allocations

RBS, unlike Goldman, does not object to the entry of an order barring its claims for contribution and indemnity. *See* RBS Opp. 2 n.3. RBS does, however, raise a procedurally improper discovery dispute: it seeks an order compelling NCUA to disclose its allocation of damages to the Overlapping Securities immediately.[9] If the Courts (or Judge Lungstrum and Judge O'Hara)[10] entertain RBS's unconventional motion to compel, they should deny RBS's request because it is based on a mischaracterization of the parties' prior agreement concerning the production of information about earlier settlements, and because such discovery is premature.

As RBS observes, the parties negotiated this issue extensively in the early part of the year. RBS's original position was that it was entitled to see all of

---

[8] For various reasons, NCUA did not bring claims for every single RMBS purchased by the Credit Unions from numerous Defendants.

[9] An order compelling production should be sought, if at all, by motion to compel rather than in an opposition to a motion seeking other relief. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").

[10] RBS states that its filing is directed solely to Judge Lungstrum. *See* RBS Opp. 2 n.2. But RBS is objecting to a motion that the three Courts together ordered to be briefed jointly; and in doing so is relying heavily on interrogatories issued jointly by all Defendants under § 7(b) of the Master Discovery Protocol in these coordinated cases. Presumably if NCUA has an obligation to provide additional information under that joint interrogatory now, it has that same obligation to all Defendants (not just RBS) and as to overlapping Certificates in all coordinated cases (not just in the *RBS Kansas* Action). That said, NCUA has never objected – and does not now object – to the method the Courts may choose to resolve this issue, whether together or individually.

1  NCUA's prior settlement agreements. *See* RBS Exh. A, at 10. NCUA did not
2  agree that any information about prior settlements was then discoverable. As part
3  of a compromise, NCUA offered to answer a formal interrogatory that would
4  include its internal allocations of past settlements, provided that RBS would not
5  seek any further discovery beyond the interrogatory. *See id.* at 6. RBS refused to
6  agree to that condition, *see id.* at 3, and NCUA offered as a further compromise to
7  answer the interrogatory provided that "no further discovery . . . regarding NCUA's
8  settlements will occur until after summary judgment is fully briefed," *see id.* at 2.
9  NCUA further objected to "piecemeal discovery" of its settlement amounts as
10 "inefficient and unnecessary," and reserved its right to "challenge any further
11 discovery that Defendants seek at the appropriate time." *Id.* RBS responded by
12 agreeing to "defer additional discovery as it relates to the calculation of an offset
13 for settlement proceeds NCUA has obtained to date until after March 25, 2016." *Id.*
14 at 1. NCUA then agreed to answer RBS's interrogatory. *See id.* When NCUA
15 served its answer, it expressly preserved its objection that set-off discovery was
16 "premature until liability and damages had been established" and stated that it had
17 "agreed to respond to this interrogatory now based on Defendants' agreement not to
18 seek any additional set-off discovery until after summary judgment." Goldman
19 Exh. 1, at 6.
20     NCUA thus – contrary to RBS's claims (at 6) – expressly preserved its
21 objection that set-off discovery was premature and put RBS on notice that it would
22 not agree to produce information on a piecemeal basis. Those objections are well-
23 founded. Inquiry about prior settlements for purposes of establishing a setoff
24 against a potential future verdict is premature during ordinary fact discovery. *See*
25 *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982) (refusing discovery
26 into a settlement agreement because it "would not be evidence relevant to any issue
27 in this case other than the ministerial apportionment of damages, a mathematical
28

9
REPLY MEMORANDUM IN SUPPORT OF THE SETTLING PARTIES' JOINT MOTION FOR A BAR ORDER

computation which the Court rather than the jury will perform").[11] Further, NCUA had a good reason for agreeing as a compromise to disclose allocations about two-year-old settlements – which offer relatively little insight into NCUA's current valuation of its claims after extensive discovery and litigation – while refusing to make ongoing disclosures of settlement allocations that could affect ongoing negotiations.

RBS also incorrectly argues (at 6-7) that because NCUA has publicly disclosed the aggregate amount of its settlement with Barclays, it cannot assert a confidentiality interest in the particular amounts allocated to particular Certificates. In addition to serving as liquidating agent for each of the failed Credit Unions that brought claims in these coordinated cases, the NCUA Board[12] serves in a separate capacity as head of a federal agency that administers two related public funds.[13] Those public funds stand as claimants against the liquidated Credit Unions for billions of dollars paid on the Credit Unions' behalf. *See* 12 C.F.R. § 709.5(b). Because of those multiple capacities, and of the importance of these cases to thousands of credit unions and more than a hundred million credit union members

---

[11] *Accord Burlington v. News Corp.*, 2015 WL 2070063, at *4 (E.D. Pa. May 4, 2015) (following *Bottaro*; observing that "[m]any courts" have reached the same conclusion); *Wagner v. Circle W Mastiffs*, 2013 WL 4479070, at *4 (S.D. Ohio Aug. 19, 2013) ("[C]ourts . . . have delayed disclosure of settlement agreements until after trial because set-off is not an issue to be addressed until after the entry of a verdict."); *Polston v. Eli Lilly & Co.*, 2010 WL 2926159, at *2 (D.S.C. July 23, 2010) (refusing to "order the disclosure of the amount of [a prospective setoff] credit until a verdict finding liability . . . has been reached"); *ABF Capital Mgmt. v. Askin Capital*, 2000 WL 191698, at *3 (S.D.N.Y. Feb. 10, 2000) (refusing to compel production of a settlement agreement because setoff "does not need to be addressed at the present time" and could be resolved "after trial").

[12] The NCUA Board has three members, each appointed by the President and confirmed by the Senate. 12 U.S.C. § 1752a(b).

[13] Specifically, the National Credit Union Share Insurance Fund and the Temporary Corporate Credit Union Stabilization Fund.

nationwide, the NCUA Board has made the judgment that the public should be informed about the overall progress of NCUA's efforts to remedy the damage that Defendants' defective RMBS have caused the credit union system. That public disclosure provides the Non-Settling Defendants with more information about NCUA's settlements than they could expect if facing some other private adversary. But RBS does not and cannot explain why that limited disclosure should require NCUA to give up its legitimate interests in preserving the confidentiality of additional details such as specific allocations to specific claims that NCUA is continuing to litigate. Indeed, RBS's very interest in those details shows that it believes it will obtain an advantage by knowing them now (when they are relevant only to settlement strategy) rather than months before trial (when they might become relevant to a judgment credit).

Notably, FHFA, a similarly situated government agency, likewise disclosed its total settlements with defendants like RBS,[14] but sought to keep individual allocations confidential. RBS agreed to that procedure (and benefited from the settlement it enabled) without raising its current objections. It offers no explanation for its inconsistent position here. In sum, like Goldman, RBS has not demonstrated any legitimate interest in immediate access to confidential allocations; unlike Goldman, RBS does not even advance the (meritless) contention that it needs to see that information to formulate a position on the Proposed Order. Its request should thus be denied.

## CONCLUSION

NCUA respectfully requests that the Courts enter the Proposed Order.

---

[14] *See* FHFA, *FHFA Announces Settlement with RBS* (June 19, 2014), http://www.fhfa.gov/Media/PublicAffairs/Pages/FHFA-Announces-Settlement-with-RBS.aspx.

| | | |
|---|---|---|
| 1 | Dated: November 20, 2015 | Terry W. Bird<br>BIRD, MARELLA, BOXER, WOLPERT,<br>NESSIM, DROOKS, LINCENBERG &<br>RHOW, PC |
| 2 | | |
| 3 | | George A Zelcs<br>KOREIN TILLERY LLC |
| 4 | | |
| 5 | | Douglas R. Sprong – Admitted *Pro Hac Vice*<br>dsprong@koreintillery.com |
| 6 | | Peter H. Rachman – Admitted *Pro Hac Vice*<br>prachman@koreintillery.com |
| 7 | | Robert L. King – Admitted *Pro Hac Vice*<br>rking@koreintillery.com |
| 8 | | Diane Moore Heitman<br>dmoore@koreintillery.com |
| 9 | | KOREIN TILLERY LLC<br>505 North Seventh Street, Suite 3600 |
| 10 | | St. Louis, MO 63101<br>Tel: (314) 241-3844; Fax: (314) 241-3325 |
| 11 | | |
| 12 | | Mark C Hansen – Admitted *Pro Hac Vice*<br>mhansen@khhte.com |
| 13 | | David C Frederick – Admitted *Pro Hac Vice*<br>dfrederick@khhte.com |
| 14 | | Wan J. Kim – Admitted *Pro Hac Vice*<br>wkim@khhte.com |
| 15 | | Joseph S. Hall – Admitted *Pro Hac Vice*<br>wkim@khhte.com |
| 16 | | KELLOGG, HUBER, HANSEN, TODD,<br>EVANS & FIGEL, P.L.L.C. |
| 17 | | 1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036 |
| 18 | | Tel: (202) 326-7900; Fax: (202) 326-7999 |
| 19 | | Michael J. McKenna, General Counsel<br>michaelm@NCUA.gov |
| 20 | | John K. Ianno, Associate General Counsel<br>johni@NCUA.gov |
| 21 | | NATIONAL CREDIT UNION<br>ADMINISTRATION |
| 22 | | 1775 Duke Street<br>Alexandria, Virginia 22314-3428 |
| 23 | | Tel: (703) 518-6350; Fax: (703) 518-6569 |
| 24 | | By: /s/ T. Bird / MI |
| 25 | | Terry W. Bird<br>Attorneys for Plaintiff National Credit Union |
| 26 | | Administration Board |
| 27 | | |
| 28 | | |

12

REPLY MEMORANDUM IN SUPPORT OF THE SETTLING PARTIES' JOINT MOTION FOR A BAR ORDER