TERRY BIRD
twb@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS & LINCENBERG, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Fax: (310) 201-2110

Attorneys for Plaintiff National Credit Union
Administration Board
(Additional Counsel on Signature Page)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of U.S. Central Federal Credit Union and of Western Corporate Federal Credit Union, <br><br> Plaintiff, <br><br> vs. <br><br> GOLDMAN, SACHS & CO., GSP MORTGAGE SECURITIES CORP., and RESIDENTIAL ACCREDIT LOANS, INC., <br><br> Defendants. | Case No. CV-11-6521 GW(JEMx) <br><br> **MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR A BAR ORDER** <br><br> Am. Compl. filed: October 29, 2012 <br> Judge: Hon. George Wu <br> Courtroom: 10 <br><br> Hearing Date: June 6, 2016 <br> Hearing Time: 8:30 a.m. |

Memorandum of Law In Support Of Joint Motion For A Bar Order

**PRELIMINARY STATEMENT**

This Motion arises from the settlement of claims between NCUA and Goldman Sachs (the "Settling Parties").[1]  The Settling Parties have agreed that NCUA's claims against Goldman Sachs in this Action (the "*Goldman Sachs California Action*") and the *Goldman Sachs New York Action*[2] should be dismissed, and will file stipulations of dismissal once a ruling is issued on this motion.  NCUA has brought claims against two other defendants – RBS and Fremont[3] – with respect to two RMBS Certificates at issue in the *Goldman Sachs California Action* (the "Overlapping Securities").[4]  A term of the settlement is that the Settling Parties agree to seek the entry of appropriate orders barring claims by RBS, Fremont, and other alleged tortfeasors not named as defendants in the NCUA litigation (the "Non-Settling Defendants") against Goldman Sachs for contribution or indemnity in connection with the Overlapping Securities.

Courts have recognized that orders barring contribution and indemnity are key to enabling settlements involving fewer than all defendants and alleged tortfeasors in complex litigation such as these coordinated cases.  The Second, Ninth, and Tenth

---

[1]  "NCUA" refers to the National Credit Union Administration Board, as liquidating agent for three credit unions:  U.S. Central Federal Credit Union ("U.S. Central"), Western Corporate Federal Credit Union, and Southwest Corporate Federal Credit Union.  "Goldman Sachs" refers collectively to Goldman, Sachs & Co. and GS Mortgage Securities Corp.

[2]  *NCUA v. Goldman, Sachs & Co.*, No. 13-6721 (S.D.N.Y.) ("*Goldman Sachs New York Action*").

[3]  "RBS" refers to RBS Securities, Inc.; "Fremont" refers to Fremont Mortgage Securities Corp.

[4]  The Overlapping Securities were purchased from FHLT 2006-D 2A4 (CUSIP 35729VAE7) and FHLT 2006-D M1 (CUSIP 35729VAF4) by U.S. Central.  With respect to both Overlapping Securities, NCUA brought Section 11 claims against Goldman Sachs in the *Goldman Sachs California Action* and Kansas Blue Sky Law claims against RBS and Fremont in *NCUA v. RBS Securities, Inc.*, No. 11-2340 (D. Kan.) ("*RBS Kansas Action*").

1    Circuits have all recognized that such orders are desirable and permissible in

2    appropriate cases.  Two of the judges presiding over NCUA's coordinated cases –

3    Judge Cote and Judge Lungstrum – have entered similar orders in earlier cases.[5]  This

4    Court has recently granted NCUA's requests for similar bar orders in connection with

5    NCUA's and Barclays's settlement in *NCUA v. Barclays Capital*, No. 13-6727

6    (S.D.N.Y.), and *NCUA v. Barclays Capital*, No. 12-2631 (D. Kan.), and NCUA's and

7    Morgan Stanley's settlement in *NCUA v. Morgan Stanley & Co., Inc.*, No. 13-2418 (D.

8    Kan.) and *NCUA v. Morgan Stanley & Co., Inc.*, No. 13-6705 (S.D.N.Y.).[6]  Judge Cote

9    and Judge Lungstrum have also granted similar bar orders in connection with the

10   *Barclays* and *Morgan Stanley* settlements.[7]  The parties' Contribution Bar Order

11   ("Proposed Order"), appended as Exhibit A, has been modeled on the bar orders the

12   Courts have entered in connection with NCUA's settlements with Barclays and

13   Morgan Stanley.

14       The Proposed Order would in substance (1) bar any claims against Goldman

15   Sachs for contribution or indemnity, including any claims to recover all or part of any

16   judgment or settlement against a Non-Settling Defendant that arise out of NCUA's

17

18       [5]   *E.g.*, *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 613107, at *9-11 (S.D.N.Y. Mar.

19   15, 2005) (Cote, J.); *Aks v. Southgate Trust Co.*, 1992 WL 401708, at *16-17 (D. Kan.

20   Dec. 24, 1992) (Lungstrum, J.).

21       [6]   Contribution Bar Order, *NCUA v. Goldman Sachs & Co.*, No. 11-6521, ECF No.

22   491 (C.D. Cal. Dec. 21, 2015); Civil Minutes – General on Plaintiff NCUA's Motion
     for a Bar Order, *NCUA v. RBS Securities, Inc.*, No. 11-5887, ECF No. 558 (C.D. Cal.

23   Feb. 29, 2016).

24       [7]   Contribution Bar Order, *NCUA v. Barclays Capital*, No. 13-6727, ECF No. 207

25   (S.D.N.Y. Dec. 8, 2015) (Cote, J.); Contribution Bar Order, *NCUA v. Morgan Stanley &
     Co., Inc.*, No. 13-6705, ECF No. 428 (S.D.N.Y. Jan. 29, 2016) (Cote, J.); Contribution

26   Bar Order, *NCUA v. RBS Securities*, No. 11-2340, ECF No. 724 (D. Kan. Jan. 6, 2016)

27   (Lungstrum, J.); Contribution Bar Order, *NCUA v. RBS Securities*, No. 11-2340, ECF
     No. 738 (D. Kan. Feb. 17, 2016) (Lungstrum, J.).

28

1  claims with respect to the Overlapping Securities; (2) bar Goldman Sachs from

2  asserting claims against any Non-Settling Defendant for contribution or indemnity for

3  all or part of Goldman Sachs's settlement payment to NCUA; and (3) provide a

4  judgment credit for any Non-Settling Defendant with respect to the Overlapping

5  Securities.  A Non-Settling Defendant's judgment credit will be the *greater* of the

6  amount for which Goldman Sachs actually settled (as to the Overlapping Security) or

7  Goldman Sachs's proportionate share of fault for NCUA's losses as proven at trial.

8  That provision treats any Non-Settling Defendant at least as generously as otherwise

9  applicable law governing any contribution or indemnity rights the credit recipient

10  might be able to assert against Goldman Sachs.

11  The Proposed Order protects the confidentiality of the specific amounts

12  associated with the settlement of NCUA's claims based on each of the RMBS at issue.

13  This Court's order in connection with the *Morgan Stanley* settlement provided that

14  NCUA would disclose the allocation information regarding the Overlapping Securities

15  to the relevant defendants at the time a pretrial order is filed.  Civil Minutes – General

16  at 2, *NCUA v. RBS Sec., Inc.*, No. 11-5887 (C.D. Cal. Feb. 29, 2016).  Because a pretrial

17  order has already been filed in the *RBS Kansas Action*, the Proposed Order provides (at

18  3) that NCUA will disclose the allocation information regarding the Overlapping

19  Securities to the relevant defendants promptly after the Proposed Order is entered.

20  The Proposed Order will promote the prompt and efficient resolution of these

21  and other RMBS disputes, while protecting all legitimate interests of the Settling

22  Parties and of all Non-Settling Defendants.  For all these reasons and those discussed

23  below, the parties respectfully request that the Court enter the Proposed Order

24  substantially in the form attached as Exhibit A.

25

26

27

28

**ARGUMENT**

**I.     The Proposed Contribution Bar Order Serves the Public Interest in Resolving Complex Litigation and Protects the Rights of Non-Settling Parties**

"'Where a case is complex and expensive, and resolution of the case will benefit the public, the public has a strong interest in settlement.'" *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 202 (2d Cir. 2005) (quoting *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856-57 (2d Cir. 1998)), *abrogated on other grounds by FTC v. Actavis, Inc.*, 133 S. Ct. 2223 (2013); *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) (noting the "overriding public interest in settling and quieting litigation," especially in complex cases) (internal quotation marks omitted); *see also In re WorldCom, Inc. ERISA Litig.*, 339 F. Supp. 2d 561, 567 (S.D.N.Y. 2004) (Cote, J.) (observing that the "importance of settlement to . . . complex litigation . . . is indisputable").

Because "an unlimited right to seek contribution would surely diminish the incentive to settle" complex cases involving multiple parties, settling parties often include in their settlement agreement a provision that requires the parties to seek an order "that bar[s] contribution and indemnification claims between the settling defendants and non-settling defendants." *In re WorldCom, Inc. Sec. Litig.*, 2005 WL 591189, at *5 (S.D.N.Y. Mar. 14, 2005) (internal quotation marks omitted); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 273 (2d Cir. 2006) (explaining that, without bar orders, defendants are unlikely to consent to settlement because such a "settlement would not bring . . . much peace of mind") (internal quotation marks omitted); *Franklin*, 884 F.2d at 1229 ("'Anyone foolish enough to settle without barring contribution is courting disaster.'") (quoting *In re Nucorp Energy Sec. Litig.*, 661 F. Supp. 1403, 1408 (S.D. Cal. 1987)); *Aks*, 1992 WL 401708, at *12 (Lungstrum, J.) ("Contribution inhibits settlement, particularly in complex, multiple defendant actions such as this."). Thus, courts in the Second, Ninth, and Tenth Circuits routinely enter bar orders when requested by settling parties in order to protect settling defendants

1    from claims for contribution or indemnity by non-settling persons.  *See*, *e.g.*, *Gerber v.*

2    *MTC Elec. Techs. Co.*, 329 F.3d 297, 307 (2d Cir. 2003); *Franklin*, 884 F.2d at 1231-32;

3    *FDIC v. Geldermann, Inc.*, 975 F.2d 695, 698 (10th Cir. 1992); *In re WorldCom, Inc. Sec.*

4    *Litig.*, 2004 WL 2591402, at *14-15 (S.D.N.Y. Nov. 12, 2004); *Aks*, 1992 WL 401708,

5    at *16.[8]

6         The Proposed Order is consistent with bar orders approved by the Ninth

7    Circuit in *Franklin*, 884 F.2d at 1232, and the Second Circuit in *Gerber*, 329 F.3d at 303,

8    and with guidance provided by the Tenth Circuit in *TBG, Inc. v. Bendis*, 36 F.3d 916

9    (10th Cir. 1994).  It is also consistent with the language of the bar orders previously

10   approved by this Court, Judge Cote, and Judge Lungstrum in the NCUA litigation.[9]

11        The Proposed Order is no broader than necessary to protect the legitimate

12   interests of the Settling Parties, and it fully protects the interests of the Non-Settling

13   Defendants.  It is no broader than necessary because "'the only claims that are

14   extinguished are claims where the injury is the non-settling defendants' liability to the

15   plaintiffs.'"  *WorldCom*, 2005 WL 591189, at *10 (quoting *Gerber*, 329 F.3d at 307)

16   (emphasis omitted); *see also TBG*, 36 F.3d at 928 (recognizing that courts have "allowed

17   bar orders" that cover "claims in which the damages are 'measured by' the defendant's

18   liability to the plaintiff").  The Proposed Order meets that requirement because it bars

19   only claims that

20        seek[] to recover from the Settling Defendants [*i.e.*, Goldman Sachs] any
         part of any judgment entered against the Non-Settling Defendants
21        and/or any settlement reached with any of the Non-Settling Defendants,
         in connection with any claims that are or could have been asserted
22

23

24        [8]   *See also*, *e.g.*, *Eichenholtz v. Brennan*, 52 F.3d 478, 482 n.8, 487 (3d Cir. 1995)

25   (approving bar order extinguishing claims for contribution and indemnification
     however denominated); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 n.2, 496 (11th
26   Cir. 1992) (approving bar order extinguishing all claims for contribution or indemnity
27   against the settling defendants).

28        [9]   *Supra* notes 5-6.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

against the Non-Settling Defendants that arise out of or relate to the Overlapping Securities . . . .

Ex. A, at 2. That language (materially identical to the language of bar orders previously approved and entered by this Court, Judge Cote, and Judge Lungstrum, *see supra* notes 5-6) adequately ensures that Non-Settling Defendants will be barred from asserting only claims that are based on the Non-Settling Defendants' actual or potential liability to NCUA.[10] Moreover, the Proposed Order is as narrowly drawn as possible; it relates only to the Overlapping Securities. *See id.* at 2-3.

The Proposed Order fully protects the interests of the Non-Settling Defendants because – like the judgment credit provision upheld in *Gerber* – it "award[s] a credit that is at least the settling defendants' proven share of liability." 329 F.3d at 303 (explaining that such a provision is sufficient to "protect[]" the "rights" of "non-settling defendants" without requiring a separate judicial "determination of the fairness of the settlement"); *see In re Consolidated Pinnacle West Sec. Litig.*, 51 F.3d 194, 196 (9th Cir. 1995) (explaining that such a "proportionate judgment" approach ensures that non-settling defendants are "not prejudiced" but instead "are left in the same position they would have been in if the other parties had not settled") (internal quotation marks omitted); *Aks*, 1992 WL 401708, at *13 (finding that a judgment credit based on a "proportionate offset" strikes an appropriate "balance between the objectives of contribution and settlement").

---

[10] The Proposed Order defines "Non-Settling Defendants" to include alleged joint tortfeasors that NCUA has not yet named in these consolidated cases. *See* Ex. A, at 1-2. That definition gives Goldman Sachs necessary protection against any contribution or indemnity claims by any such unnamed potential tortfeasors, while providing any such potential parties with the dual protections of a judgment credit and a bar against Goldman Sachs suing them for any part of its settlement with NCUA. Courts have approved bar orders like this one that extend to unnamed potential tortfeasors. *See supra* notes 5-6 (NCUA bar orders); *see also In re WorldCom, Inc. Sec. Litig.*, 2005 WL 2010153, at *1 (S.D.N.Y. Aug. 23, 2005) (Cote, J.).

1    Specifically, the Proposed Order entitles the Non-Settling Defendants to "a

2  judgment credit in an amount that is the greater of (a) the amount of NCUA's

3  settlement with Goldman Sachs in the Settled Actions allocated to the Overlapping

4  Securities . . . , or (b) for each such claim, state or federal, on which contribution or

5  indemnity is available, the proportionate share of Goldman Sachs' fault as proven at

6  trial." Ex. A, at 3.  That is, the Non-Settling Defendants can elect either to accept a

7  credit for the full amount of Goldman Sachs's settlement attributable to the

8  Overlapping Securities, or to prove that Goldman Sachs's proportionate share of

9  liability was greater than the amount for which it settled (and then receive a credit for

10  that greater share).  It thus entitles the Non-Settling Defendants to at least as large an

11  offset as they could otherwise have received at trial, and potentially a larger one.[11]

12  That approach mirrors the judgment-credit provisions approved by the Second Circuit

13  in *Gerber* and provisions previously approved by this Court, Judge Cote, and Judge

14  Lungstrum in the NCUA litigation, and is more generous to the Non-Settling

15  Defendants than the approach approved by the Ninth Circuit in *Franklin* and Judge

16  Lungstrum in *Aks*.[12]  It is fair and reasonable.

17

18

19

---

20    [11]   Under Section 11 of the Securities Act of 1933, the Non-Settling Defendants

21  would have contribution claims against Goldman Sachs at most for the amount of
    damages attributable to Goldman Sachs' proportionate fault with respect to the

22  Overlapping Securities. *See*, *e.g.*, *Smith v. Mulvaney*, 827 F.2d 558, 560-61 (9th Cir. 1987)

23  (adopting proportionate fault rule for contribution for SEC Rule 10b-5 actions after
    analysis of statutory language of § 11).  The Non-Settling Defendants also likely have

24  no right of contribution against Goldman Sachs under California Blue Sky Law
    because California generally prohibits non-settling parties from seeking contribution

25  from settling parties. *See* Cal. Civ. Proc. § 877.

26

27    [12]   *Compare Gerber*, 329 F.3d at 302-05 (greater of proportionate fault or amount of
    settlement), *and supra* notes 5-6 (same), *with Franklin*, 884 F.2d at 1231-32

28  (proportionate fault), *and Aks*, 1992 WL 401708, at *17 (same).

1
2

**II.     The Settlement Amounts for Specific Certificates Should Be Kept Confidential**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

Certain terms of the settlement agreement are confidential because they disclose the amounts of the settlement allocated to specific RMBS Certificates (the "Confidential Schedule").  The amounts involved in a settlement are of great concern to parties who are negotiating a compromise to pending litigation; extending confidentiality to such amounts should thus be encouraged by courts to facilitate and foster settlement.  *See, e.g.*, *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004) (explaining that there is no established presumption of access with respect to information contained in confidential settlement agreements that are not filed with the court and that "honoring the parties' express wish for confidentiality may facilitate settlement, which courts are bound to encourage"); *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002) (recognizing that district courts "have the authority to grant protective orders for confidential settlement agreements").  Accordingly, district courts are empowered to prevent access to confidential information relating to settlements "when necessary to encourage the amicable resolution of disputes." *City of Hartford v. Chase*, 942 F.2d 130, 135 (2d Cir. 1991).

19
20
21
22
23
24
25
26
27

Here, the information on the Confidential Schedule is a key part of the settlement.  If that information were disclosed, it could prejudice NCUA's ability to litigate and negotiate claims against other defendants, or Goldman Sachs' ability to litigate and negotiate claims brought by other plaintiffs.  Any interest of defendants in other lawsuits involving NCUA's RMBS litigation or of the public in obtaining access to the Confidential Schedule is significantly outweighed by the Settling Parties' right to maintain the terms of the settlement in confidence.  Accordingly, the Proposed Order contains an appropriate request that the allocations in the settlement be made subject to a protective order of the Court.  Ex. A, at 3.

28

1    However, NCUA recognizes that disclosure of information about the specific

2    amount allocated to the Overlapping Securities will become necessary to give effect to

3    the judgment credit provisions of the Proposed Order should NCUA proceed to trial

4    in the *RBS Kansas Action*.  Accordingly, the Proposed Order provides that, "at the time

5    a pretrial order is issued in any action in which NCUA asserts claims based on the

6    Overlapping Securities (or, if such a pretrial order has been entered before the entry of

7    this Order, promptly after this Order is entered), NCUA shall disclose the information

8    in the Confidential Schedule pertaining to the Overlapping Securities to any Non-

9    Settling Defendant against which NCUA asserts such claims." *Id.*  This provision is

10   consistent with the bar orders approved by this Court, Judge Cote, and Judge

11   Lungstrum, with additional parenthetical language to accommodate the fact that a

12   pretrial order has already been entered in the *RBS Kansas Action*.[13]

### CONCLUSION

14   The parties respectfully request that the Court enter the Proposed Order.

15

16

17

18

19

20

21

22

---

23   [13] *Supra* notes 5-6.  In its ruling in connection with the *Barclays* settlement, this
24   Court declined to resolve the question whether the bar order should explicitly require
     disclosure at the time of the pretrial order, because Goldman Sachs had not raised the
25   issue. *See* Ruling at 9 n.12, *Goldman Sachs California Action*, ECF No. 490 (Dec. 21,
26   2015).  The Court did not express any disapproval of such a requirement, and more
     recently the Court approved such a requirement in connection with the *Morgan Stanley*
27   settlement. *See* Civil Minutes – General on Plaintiff NCUA's Motion for a Bar Order
28   at 2, *NCUA v. RBS Sec., Inc.*, No. 11-5887, ECF No. 558 (C.D. Cal. Feb. 29, 2016).

Dated: April 5, 2016

LAWRENCE T. GRESSER
(*pro hac vice*)
NATHANIEL P. T. READ
(*pro hac vice*)
PATRICK M. CONNORTON
(*pro hac vice*)
COHEN & GRESSER LLP
800 Third Avenue, 21st Floor
New York, New York 10022
Telephone: (212) 957-7600
Facsimile: (212) 957-4514


By: /s/ *Lawrence T. Gresser*

*Attorneys for Defendants Goldman,*
*Sachs & Co. and GS Mortgage*
*Securities Corp.*

TERRY W. BIRD
BIRD, MARELLA, BOXER,
  WOLPERT, NESSIM, DROOKS
  & LINCENBERG, P.C.

DAVID C. FREDERICK
WAN J. KIM
GREGORY G. RAPAWY
ANDREW C. SHEN
KELLOGG, HUBER, HANSEN,
  TODD, EVANS & FIGEL, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Fax: (202) 326-7999

GEORGE A. ZELCS
KOREIN TILLERY LLC
205 North Michigan Avenue
Suite 1950
Chicago, Illinois 60601
Telephone: (312) 641-9750
Fax: (312) 641-9751

STEPHEN M. TILLERY
DOUGLAS R. SPRONG
ROBERT L. KING
DIANE E. MOORE
KOREIN TILLERY LLC
505 North Seventh Street
Suite 3600
St. Louis, Missouri 63101-1625
Telephone: (314) 241-4844
Fax: (314) 241-3525

By: /s/ *David C. Frederick*

*Attorneys for Plaintiff NCUA*